1 **LANZONE MORGAN, LLP**
2 **Jomo K. Stewart, SBN 197560**
**jks@lanzonemorgan.com**
3 **5001 Airport Plaza Drive, Suite 210**
**Long Beach, California 90815**
4 **Telephone: 562-596-1700**
**Facsimile: 562-596-0011**
5
6
Attorneys for Plaintiffs
7
8 ## IN THE UNITED STATES DISTRICT COURT
9 ## FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11 ASHLEY WILLIAMS, an individual; } Case No.:
HECTOR MENDEZ, an individual; }
12 A.R. and D.R., minors, by and through } **COMPLAINT FOR DAMAGES AND**
their Guardians, } **DEMAND FOR JURY TRIAL**
13 }
14                              Plaintiffs, } 1. Violation of Civil Rights (42 U.S.C. §
} 1983, 1st Amendment, Familial Association)
15              vs. } 2. Violation of Civil Rights (42 U.S.C.
} §1983, 4th Amendment)
16 } 3. Violation of Civil Rights (42 U.S.C.
COUNTY OF FRESNO; CITY OF } §1983, 14th Amendment Procedural Due
17 MADERA; LEEDER VUE, an } Process);
individual; SOCORRO RUVALCABA, } 4. Violation of Civil Rights (42 U.S.C.
18 an individual; YEE LENG THAO, an } §1983, 14th Amendment Substantive Due
individual; NANCY BOYAJIAN, an } Process);
19 individual; CLAY HOOVER, an } 5.Violation of Civil Rights (42 U.S.C.
20 individual; EILEEN GUARACHA, an } §1983, Judicial Deception)
individual; ENRIQUE ROBLEDO, an } 6. *Monell* related claims (42 U.S.C.
21 individual; and DOES 1 through 10; } §1983)
} 7. Intentional Infliction of Emotional
22 } Distress
} 8. Negligence
23                              Defendants. }
24 }
25
26 _____ }
27
28

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiffs, who allege upon information and belief as follows:

## JURISDICTION & VENUE

1.      Plaintiffs bring this civil rights lawsuit pursuant to 42 U.S.C. §1983 to redress the deprivation by Defendants, at all times herein acting under color of state law, of rights secured to Plaintiffs under the United States Constitution, including the First, Fourth, and Fourteenth Amendments.

2.      This Complaint arises under the Federal Civil Rights Act, 42 U.S.C. § 1983. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this judicial district under 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claims asserted herein occurred in this District. Venue is also proper under 28 U.S.C. § 1391(b)(1) because all parties are subject to personal jurisdiction in this District and therefore "reside" in this District as that term is defined in 28 U.S.C. § 1391(c).

4.      Plaintiffs make the following allegations and claims upon personal belief, investigation of their counsel and on information and belief.

## PARTIES

"PLAINTIFFS"

5.      Plaintiff Ashley Williams ("ASHLEY") is the mother of the minor Plaintiffs, A.R. and D.R. (fictitious names are used herein to protect the minors' privacy). A.R. was born in May 2011. D.R. was born in August 2013. ASHLEY is also the biological mother of H.M. and G.M., half-siblings to A.R. and D.R. At all relevant times herein, ASHLEY, A.R., D.R., H.M., and G.M. were residents of the County of Fresno, California.

6.      Plaintiff Hector Mendez ("HECTOR") is the biological father of H.M. and G.M. At all relevant times herein, HECTOR was a resident of the County of Madera, California.

7.      Plaintiffs are referred to collectively at times herein as the "PLAINTIFFS."

2

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**<u>DEFENDANTS</u>**

8.    Defendant COUNTY OF FRESNO ("COUNTY") is a municipality in corporate form, organized and existing under the laws of the State of California, and has as an administrative subunit thereof the DEPARTMENT OF SOCIAL SERVICES (hereinafter "DEPARTMENT"), both of which, and any administrative or executive subunits thereof, will at times be collectively referred to herein as COUNTY.

9.    The Defendant, COUNTY was at all relevant times and is a local public entity, as that term is defined in Government Code section 900.4.

10.    Defendant COUNTY was at all times alleged herein to be responsible for the appointment and promotion of employees of the COUNTY, and for the supervision, training, instruction, discipline, control, and conduct of said employees.

11.    At all times alleged herein, Defendant COUNTY had the power, right, and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, the laws of the State of California, and the laws of the local municipalities.

12.    At all relevant times, Defendant LEEDER VUE ("VUE") was an individual who was an officer, agent, and employee of the COUNTY and of the DEPARTMENT.

13.    At all relevant times, Defendant SOCORRO RUVALCABA ("RUVALCABA") was an individual who was a supervisor, officer, agent, and employee of the COUNTY and of the DEPARTMENT. At each stage in the proceedings, Defendant RUVALCABA was required to consult with, oversee, direct, and agree with the steps taken by her subordinate social workers and investigators, including, but not limited to YEE LENG THAO, EILEEN GUARACHA, and ENRIQUE ROBLEDO prior to the subordinate performing any tasks or actions. Moreover, each court report is required to be reviewed, approved, and cosigned by RUVALCABA before it is filed.

3

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

14.    At all relevant times, Defendant YEE LENG THAO ("THAO") was an individual who was an officer, agent, and employee of the COUNTY and of the DEPARTMENT.

15.    At all relevant times, Defendant NANCY BOYAJIAN ("BOYAJIAN") was an individual who was an officer, agent, and employee of the COUNTY and of the DEPARTMENT.

16.    At all relevant times, Defendant EILEEN GUARACHA ("GUARACHA") was an individual who was an officer, agent, and employee of the COUNTY and of the DEPARTMENT.

17.    At all relevant times, Defendant ENRIQUE ROBLEDO ("ROBLEDO") was an individual who was an officer, agent, and employee of the COUNTY and of the DEPARTMENT.

18.    Defendant CITY OF MADERA ("CITY") is a municipality in corporate form, organized and existing under the laws of the State of California, and has as an administrative subunit thereof the CITY OF MADERA POLICE DEPARTMENT (hereinafter "POLICE"), both of which, and any administrative or executive subunits thereof, will at times be collectively referred to herein as the CITY.

19.    The Defendant CITY was at all relevant times and is a local public entity, as that term is defined in Government Code section 900.4.

20.    Defendant CITY was at all times alleged herein to be responsible for the appointment and promotion of employees of the CITY, and for the supervision, training, instruction, discipline, control, and conduct of said employees.

21.    At all times alleged herein, Defendant CITY had the power, right, and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, the laws of the State of California, and the laws of the local municipalities.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

22.    At all relevant times, Defendant CLAY HOOVER ("HOOVER") was an individual who was an officer, agent, and employee of the CITY and of the POLICE.

23.    DOES 1 through 10 were officers, social workers, agents, and employees, or were otherwise able to act under color of law on behalf of the COUNTY, CITY and its subdivisions, including but not limited to the DEPARTMENT and POLICE.  By so acting under color of law, DOES 1 through 10 engaged in wrongful conduct which caused injuries to PLAINTIFFS as alleged *infra*.

24.    PLAINTIFFS are ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 10, and for that reason has sued such Defendants by such fictitious names. PLAINTIFFS will seek leave of the Court to amend this Complaint to identify said Defendants once their identities are known.

25.    PLAINTIFFS are informed and believe, and therefore allege, that each Defendant designated as a DOE was responsible in any actionable manner for the events and happenings herein referred to, which proximately caused the injuries and damages to PLAINTIFFS as alleged *infra*.

26.    Defendants, and each of them, performed the wrongful acts and omissions alleged herein in bad faith and with knowledge that their conduct violated well and clearly established and settled law.

27.    At all times material herein, Defendants, and each of them, were acting as the employees, agents, representatives, and officers of every other defendant herein, and within the course and scope of such employment and agency.

28.    PLAINTIFFS are informed and believe, and thereon allege, that each of the named individual defendants herein, did knowingly and willingly, with a common intent and scheme set forth in further detail herein below, conspire to injure PLAINTIFFS, and deprive PLAINTIFFS of their rights, liberties, and interests, as such rights are afforded under the United States Constitution and the California State Constitution and conspired generally to damage PLAINTIFFS and inflict great injury upon them.

**<u>PLAINTIFFS SATISFIED ALL PROCEDURAL REQUIREMENTS TO BRING</u>**

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**THIS CLAIM AGAINST DEFENDANTS**

29.    On April 18, 2018, ASHLEY and HECTOR sent a Claim Form against the County of Fresno, compliant with Government Code section 910.4, generally alleging the conduct described *infra*.  The COUNTY denied the claim on June 12, 2018.

30.    On April 18, 2018, ASHLEY and HECTOR sent a Claim Form against the City of Madera, compliant with Government Code section 910.4, generally alleging the conduct described *infra*.  The CITY denied the claim on May 16, 2018.

**STATEMENT OF FACTS**

31.    As of October 30, 2017, ASHLEY, HECTOR, A.R., D.R., H.M., and G.M. constituted a family unit entitled to Constitutional protections, including, but not limited to, the right to live together free of unwarranted governmental interference, the right to familial privacy, and the right of parents to reasonably direct the upbringing of their children.

32.    ASHLEY is the natural and biological mother of the minor Plaintiffs A.R. and D.R. ASHLEY is also the biological mother of H.M. and G.M., half-siblings to A.R. and D.R.

33.    H.M. was born in October 2015. G.M. was born in May 2017.

34.    David Rivera is the natural and biological father of the minor Plaintiffs A.R. and D.R.

35.    HECTOR is the natural and biological father of H.M. and G.M.

36.    In October 2017, A.R., D.R., H.M, and G.M. (the "MINORS") resided with their mother, ASHLEY, at a residence in Fresno County. HECTOR, ASHLEY's boyfriend, resided at his home in the City of Madera with his adult daughter from another relationship. At the time, ASHLEY and HECTOR were engaged to be married.

37.    Despite living in Fresno County, Ashley and the MINORS visited and spent time with HECTOR at his home in the County of Madera.

38.    ASHLEY and HECTOR were gainfully employed and neither had a criminal history, substance abuse history, mental health history, or a "CPS" history.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

39.    As a working mother, Ashley employed the use of her mother, the maternal Grandmother, as a daycare provider for the MINORS.

40.    In May 2017, ASHLEY and HECTOR were blessed with their second child, G.M. From his birth to October 2017, ASHLEY and HECTOR provided for G.M.'s medical care and health by attending scheduled pediatrician appointments, and by bringing G.M. to the emergency room due to illness on a couple occasions.

41.    G.M. was seen by his pediatrician, Dr. Singh, on October 23 and received immunizations. Two days later, G.M. developed a cough and started to vomit.

42.    On October 29, ASHLEY, H.M. and G.M. spent the night at HECTOR's home while A.R. and D.R. stayed with the Grandmother.

43.    In the early morning of October 30, ASHLEY left for work around 3:30 a.m. Because she was running late, she asked HECTOR to watch H.M. and G.M. rather than take the kids to the Grandmother's home as was her usual practice.

44.    Around 5 a.m. HECTOR noticed G.M. to be displaying seizure like symptoms and vomiting. HECTOR had his adult daughter call 911 while he attended to his son. At around 5:20 a.m., medical personnel and a Madera City Police Officer responded to HECTOR's home. The responding Police Officer did not determine there was a basis to place H.M. into protective custody.

45.    G.M. was taken to Valley Children's Hospital in the City of Madera. G.M. and HECTOR arrived at the hospital around 7 a.m. and ASHLEY was already there when they arrived.

46.    Later that morning, the POLICE received a referral that G.M. had no external injuries but had a brain bleed. At around 11:30 a.m., Officer HOOVER arrived at Valley Children's Hospital and interviewed ASHLEY and HECTOR.

47.    HECTOR informed HOOVER that after ASHLEY left that morning, he got up to get something to eat while H.M. and G.M. were asleep. After eating, HECTOR checked G.M.'s crib and noticed G.M. had vomited. G.M.'s arms were also stretched above his head and were stiff. HECTOR then instructed his adult daughter to call 911. Both

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  ASHLEY and HECTOR informed HOOVER that they had no idea how the brain bleed

2  was caused and denied injuring any of their children.

3  48.    Upon information and belief, PLAINTIFFS allege that HOOVER made a referral

4  to the Fresno County CPS that morning because ASHLEY resided in the County of

5  Fresno. A referral to the Madera County CPS was never made and at no time did the

6  Madera County CPS investigate the circumstance of G.M.'s hospitalization or the

7  parents' care of H.M.

8  49.    COUNTY social worker THAO and an assisting social worker Joseph Adolph

9  arrived at the hospital around 3:30 p.m.

10  50.    THAO was immediately informed that ASHLEY and HECTOR had been at

11  G.M.'s bedside the entire time and were cooperative with law enforcement and the

12  hospital personnel.

13  51.    When THAO met in person with ASHLEY and HECTOR in the hospital room,

14  ASHLEY was holding G.M. in her arms. THAO immediately recognized that G.M.

15  appeared to be healthy and alert. ASHLEY informed THAO that G.M. appeared to be

16  acting like himself again.

17  52.    THAO interviewed ASHLEY and HECTOR, and both adamantly denied

18  physically abusing G.M. or any of the MINORS. ASHLEY and HECTOR informed

19  THAO that HECTOR had found G.M. nonresponsive in the morning. G.M. was

20  throwing up and had his arms stretched straight out. HECTOR immediately called 911.

21  THAO was informed that Dr. Singh was G.M.'s pediatrician and that the hospital was

22  running tests to determine what happened to G.M.

23  53.    When THAO inquired as to disciplining the MINORS, ASHLEY stated that she

24  uses time-outs for A.R., and redirection for D.R. and H.M.

25  54.    At around 5 p.m., COUNTY social workers THAO, Joseph Adolph, and Officer

26  HOOVER conducted a home visit and safety assessment of HECTOR's home in Madera

27  County. THAO and HOOVER assessed the safety of the minor H.M. and noted that he

28  was dressed in clean clothes and looked healthy.

8

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

55.     During the home safety assessment, HECTOR informed THAO and HOOVER that G.M. had not been feeling well and been vomiting the previous week since receiving his immunizations on October 23.

56.     THAO and HOOVER assessed the entire home and noted that it was clean, well kept, and HECTOR had provisions for H.M and G.M. to include diapers, formula, and toys. THAO's and HOOVER's assessment indicated there were no safety risks to the MINORS at HECTOR's home. HOOVER determined that there was not a basis or evidence to place H.M. into protective custody.

57.     Around 6 p.m., County social workers THAO and Joseph Adolph interviewed ASHLEY at the hospital again. ASHLEY again informed them that the Grandmother was the main daycare provider of the MINORS while she was at work.

58.     Upon information and belief, Plaintiffs allege that after the interview, THAO consulted with his supervisor, RUVALCABA. THAO and RUVALCABA jointly decided they would seize G.M. from the custody of HECTOR and ASHLEY. Upon information and belief, THAO and RUVALCABA knew that their investigation had not uncovered sufficient evidence to request a removal warrant from a Fresno Juvenile Judge. Therefore, THAO and RUVALCABA sought the assistance of Officer HOOVER.

59.     At around 6:30 p.m., over 12 hours from when the POLICE had their first contact with the family, G.M. was seized from his parent's custody by HOOVER, RUVALCABA, and THAO, without his parent's consent, court order, or exigency.

60.     At the time of the removal, G.M. was still admitted to the hospital. THAO, RUVALCABA, and HOOVER had no articulable evidence that G.M. was due to be released from the hospital that day. In fact, THAO, RUVALCABA, and HOOVER were aware based on statements from the hospital staff that G.M. was likely to be hospitalized for several days.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

61.    THAO, RUVALCABA, and HOOVER had no articulable evidence that G.M. was in imminent danger or that there was an emergency situation that would require G.M. to be seized from his parents.

62.    THAO, RUVALCABA, and HOOVER possessed no articulable information or evidence that either ASHLEY or HECTOR had ever abused any of their children. The evidence that THAO, RUVALCABA, and HOOVER possessed actually corroborated that the MINORS were safe in their parents' care.

63.    THAO, RUVALCABA, and HOOVER lacked reasonable cause to remove G.M. without a Court order and that degree of interference into ASHLEY's and HECTOR's familial association was not justified by any exigency.

64.    G.M. was not in imminent danger of suffering serious bodily injury or death within the time it would have taken THAO, RUVALCABA and HOOVER to obtain a protective custody warrant.

65.    PLAINTIFFS allege, upon information and belief, that DEFENDANTS, and each of them, purposefully failed to seek a custody warrant knowing that insufficient grounds or evidence existed to support such application, or as a result of unconstitutional policy, custom, or practice of never obtaining warrants prior to seizing children.

66.    After the seizure of G.M., THAO and HOOVER demanded that ASHLEY and HECTOR sign a "Safety Plan" providing that A.R., D.R. and H.M. would be placed in the care of the Grandmother until a Team Decision Meeting was held. THAO and HOOVER offered no other options, alternatives, or services to ASHLEY or HECTOR to prevent or eliminate the need for removal of the children. Instead, THAO and HOOVER threatened that A.R., D.R. and H.M. would be seized and placed into foster care if the Safety Plan was not immediately signed.

67.    Faced with the credible threat that A.R., D.R. and H.M. would be placed in a stranger's home, and perceiving that they had no other acceptable alternative or choice, ASHLEY and HECTOR signed the Safety Plan under duress. ASHLEY and HECTOR were coerced into signing the Safety Plan. At the time THAO and HOOVER

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  unreasonably coerced ASHLEY and HECTOR to sign the Safety Plan, A.R., D.R., and

2  H.M. were not in imminent danger of suffering serious bodily injury or death within the

3  time it would have taken THAO and HOOVER to obtain a protective custody warrant.

4  Moreover, at that point in time there was no credible, reasonable, or articulable evidence

5  to suggest that A.R., D.R., and H.M were in danger or any kind.

6  68.   At the time that THAO and HOOVER seized A.R., D.R. and H.M. and coerced

7  their parents into signing a Safety Plan, both state actors had not assessed the safety of,

8  or current circumstances of A.R. and D.R. THAO and HOOVER had never personally

9  observed A.R. and D.R., and these children were safely in the care of their Grandmother

10  in Fresno County.

11  69.   THAO and HOOVER instructed ASHLEY and HECTOR that they were not

12  permitted to have unsupervised contact with their children. THAO also instructed the

13  Grandmother to call law enforcement if ASHLEY and HECTOR attempted to take the

14  children.

15  70.   At around 7:30 p.m., COUNTY social workers THAO and Joseph Adolph

16  conducted a home visit and safety assessment of the Grandmother's home, and of A.R.

17  and D.R. in Fresno County.

18  71.   THAO interrogated the minor A.R. in private and away from any adult or family

19  member. THAO interrogated A.R. without ASHLEY's consent, and without providing

20  ASHLEY notice and an opportunity to be present.

21  72.   THAO observed that A.R. was dressed in clean clothes, had good hygiene and

22  grooming, appeared to be in good health, and did not have any visible marks, bruises, or

23  injuries.

24  73.   A.R. stated that she was in the first grade and that her parents discipline her by

25  putting her on time-outs. A.R. denied any other forms of discipline. THAO questioned

26  A.R. regarding the disciplining of D.R. and H.M. A.R. reported that her mother,

27  ASHLEY will count up to a number and the boys, D.R. and H.M. could not do anything

28  while ASHLEY was counting. THAO questioned A.R. regarding domestic violence and

11

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

A.R. stated that her parents do not fight with each other. THAO asked about drugs and alcohol use in the home. A.R. stated that she did not know what drugs or alcohol were. THAO asked A.R. if anyone had touched her, or tried to touch her on her privates; and A.R. said, "No."

74.    During the safety assessment at the Grandmother's home, THAO attempted to interview D.R. but he was asleep and would not wake up. Despite being asleep, THAO observed D.R. to be healthy with no visible signs of neglect or abuse.

75.    THAO's safety assessment of Grandmother's house confirmed that it was clean and well-furnished with plenty of food for the family.

76.    At around 11a.m. on November 1, 2017, THAO and RUVALCABA convened a Team Decision Meeting. ASHLEY and HECTOR brought fifteen relatives and friends to the meeting to include HECTOR's adult daughter, four cousins, five aunts, the Grandmother, the Great-Grandmother, and family friends. Both ASHLEY and HECTOR again adamantly denied harming any of the MINORS. The relatives present also informed THAO and RUVALCABA that ASHLEY and HECTOR were loving parents who always provided for their children. There was no evidence offered at the meeting that ASHLEY and HECTOR had a criminal history, a substance abuse history, or a history of mental health problems. THAO and RUVALCABA were again informed that both parents were gainfully employed and that the Grandmother provided daycare for all the children.

77.    At the conclusion of the meeting, despite having no corroborating evidence that ASHLEY or HECTOR harmed G.M. or any of the children, THAO and RUVALCABA informed the parents that they were seizing A.R., D.R., and H.M. from their care and custody.

78.    Reasonable and less intrusive alternative means existed to secure both PLAINTIFFS' civil rights and security, without the warrantless removal of the MINORS, yet these DEFENDANTS, and each of them, intentionally failed to pursue or even investigate such less intrusive alternative means.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

79.    THAO and RUVALCABA informed AHSLEY and HECTOR that instead of seeking a protective custody warrant for A.R., D.R., and H.M., they would request that Officer HOOVER place the aforementioned minors into protective custody. A.R., D.R., and H.M. were removed from their parents without the existence of exigent circumstances, consent or a warrant.

80.    Upon information and belief, THAO and RUVALCABA knew that their investigation had not uncovered sufficient evidence to request a removal warrant from a Fresno Juvenile Judge. Therefore, THAO and RUVALCABA again sought out the assistance of Officer HOOVER.

81.    PLAINTIFFS allege, upon information and belief, that DEFENDANTS, and each of them, purposefully failed to seek a custody warrant knowing that insufficient grounds or evidence existed to support such application, or as a result of unconstitutional policy, custom, or practice of never obtaining warrants prior to seizing children.

82.    At around 1p.m., THAO attempted a phone call to HOOVER who did not answer his phone. THAO left a message for HOOVER to contact him.

83.    At around 2 p.m., THAO received a phone call from hospital staff informing him that the retinal scan had been completed on G.M. and revealed that he did not have "retinal bleeding" which if existed would have been indicative of shaken baby syndrome.

84.    At around 3:30 p.m., HOOVER called THAO back. THAO informed HOOVER that he and RUVALCABA had decided to remove A.R., D.R., and H.M. at the Team Decision Meeting. Based on THAO's statements, HOOVER informed THAO that he would place A.R., D.R., and H.M into protective custody.

85.    At the time that HOOVER placed A.R., D.R., and H.M. into protective custody, HOOVER was aware that they were in the Grandmother's home and care in Fresno County. HOOVER was aware that A.R., D.R., and H.M were not in imminent danger of suffering serious bodily injury or death within the time it would have taken to obtain a protective custody warrant.

13

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

86.    At the time that HOOVER placed A.R., D.R., and H.M. into protective custody, he had never visited or assessed the Grandmother's home.

87.    At the time that HOOVER placed A.R., D.R., and H.M. into protective custody, he had never personally observed A.R. or D.R. HOOVER had only observed H.M. at HECTOR's home on October 30.

88.    At the time that HOOVER placed A.R., D.R., and H.M., he did not have reasonable cause to believe that these children were in immediate danger of physical or sexual abuse, or their physical environment posed an immediate threat to the child's health or safety. In his dealings with the PLAINTIFFS and the County of Fresno social workers, HOOVER was acting in accordance with the CITY's regularly established customs, practices, usages, and procedures.

89.    During the afternoon or evening of November 1, two social workers from the County of Fresno, GUARACHA and ROBLEDO went to the Grandmother's home, seized A.R., D.R., and H.M., and placed them into foster care. On information and belief, GUARACHA and ROBLEDO found the Grandmother's home to be clean and adequate for A.R., D.R., and H.M., that the children were not in imminent danger, and that there was no emergency situation that would require the children to be seized from the home.

90.    GUARACHA and ROBLEDO were not accompanied by HOOVER or any other law enforcement personnel. When GUARACHA and ROBLEDO seized A.R., D.R., and H.M., they were objectively and subjectively aware that a peace officer had not delivered A.R., D.R., and H.M. into their custody and control.

91.    PLAINTIFFS are informed and believe and, on such basis, allege that when the DEFNDANTS arrived at the Grandmother's home they searched the home and examined A.R., D.R., and H.M. to ascertain whether or not the children were in danger. Upon such examination, on information and belief, the DEFENDANTS found the home to be free of hazards and found A.R., D.R., and H.M. to be appropriately dressed and in good health. PLAINTIFFS are further informed and believe, and on such basis allege

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1   that it would have been readily apparent to any reasonable social worker or law

2   enforcement officer facing similar circumstances that the A.R., D.R., and H.M. were not

3   in danger of suffering severe bodily injury of any kind in the time it would have taken to

4   obtain a warrant. All the DEFENDANTS were integral participants in the unwarranted

5   seizure and detention of A.R., D.R., and H.M.

6   92.     The DEFENDANTS possessed no reasonable or articulable evidence to suggest

7   that A.R., D.R., and H.M. were in immediate danger of suffering severe bodily injury or

8   death at the hands of ASHLEY and HECTOR in the time it would have taken to obtain a

9   protective custody warrant.

10  93.     PLAINTIFFS allege, upon information and belief, that DEFENDANTS, and each

11  of them, purposefully failed to seek a custody warrant knowing that insufficient grounds

12  or evidence existed to support such application or as a result of unconstitutional policy,

13  custom, or practice of never obtaining warrants prior to seizing children.

14  94.     PLAINTIFFS are informed and believe and on that basis allege that both A.R.,

15  D.R., H.M., and G.M. were subjected to physical examinations without notice to or the

16  presence of their parents. These medical examinations were completed without first

17  obtaining a court order authorizing the performance of said exams. PLAINTIFFS are

18  further informed and believe and on such basis allege that there was no exigency

19  justifying the unwarranted medical examinations of the children. PLAINTIFFS are

20  informed and believe and thereon allege that all children seized from their parents by the

21  County of Fresno are given medical examinations without notice to, or the presence of,

22  their parents, and in the absence of exigency and/or a court order permitting such exams,

23  and that the practice continues to this day.

24  95.     PLAINTIFFS are informed and believe and on that basis allege that both A.R.,

25  D.R., and H.M. were subjected to interrogations by COUNTY Defendants without

26  exigency, Court Order, or consent of their parents.

27  96.     After the search and seizure of the MINORS, THAO, RUVALCABO, VUE, and

28  BOYAJIAN drafted reports, and other documents, pertaining to their investigations and

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

interactions with the PLAINTIFFS. THAO, RUVALCABO, VUE, BOYAJIAN included false statements, and/or suppressed known exculpatory evidence, in these reports. THAO, RUVALCABO, VUE, and BOYAJIAN knew that these reports, and other documents, would be reviewed, examined, and/or relied upon by subsequent COUNTY social workers and Juvenile Court Judges.

97.    COUNTY agent VUE filed a Petition with the juvenile court in the County of Fresno and on behalf of Defendant COUNTY. The Petition sets out a series of supporting "facts." The Petition was verified by Defendant VUE and signed under penalty of perjury.

98.    The "facts" set out in the Petition are false, despite having been verified by VUE under penalty of perjury and, she knew at the time she verified the Petition that the statements contained therein were false, either directly or by omission of critical known exculpatory facts, and furthermore, were entirely insufficient to establish a threat of injury. The false allegations mislead the juvenile court into believing A.R., D.R., H.M., and G.M. were in danger, when in fact they were not and VUE knew they were not.

99.    Upon information and belief, PLAINTIFFS allege that at the time that VUE signed the Petition and Detention Report, she had had no personal contact with any of the PLAINTIFFS.

100.    On November 2, 2017, Defendants THAO, RUVALCABO, VUE collectively drafted the Detention Report.

101.    A "Detention Report" is an official document that is filed with the juvenile dependency court in advance of the Detention Hearing. The Detention Hearing is generally the first hearing that takes place in a juvenile dependency action. A Detention Report is an evidentiary document the juvenile court will rely on in making its prima facie findings regarding the propriety of the detention of a child from its parents and/or family home. The matter set out in the Detention Report is required to be honest, accurate, and complete in all material respects.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

102. On November 2, 2017, Defendants THAO, RUVALCABO, and VUE signed the Detention Report. The Detention Report included false statements and omitted known exculpatory evidence.

103. The Detention Hearing was held on November 2, 2017. At the Detention Hearing, the Petition was considered, and the Detention Report was accepted into evidence. The Juvenile Court Judge considered and relied upon the false, inaccurate, and incomplete statements contained in the Petition and Detention Report. Based on the false and materially incomplete information before it, the Juvenile Court Judge ordered that A.R., D.R., H.M., and G.M. would continue to be detained from ASHLEY's and HECTOR's care and custody.

104. On or around December 4, 2017, Defendant BOYAJIAN drafted the Jurisdiction Report.

105. On December 4, 2017, Defendant BOYAJIAN signed the Jurisdiction Report. The Jurisdiction Report included false statements and omitted known exculpatory evidence.

106. Upon information and belief, PLAINTIFFS allege that at the time that BOYAJIAN signed the Jurisdiction Report, she had had no personal contact with any of the PLAINTIFFS.

107. On or around January 26, 2018, Defendant BOYAJIAN drafted the Disposition Report.

108. On or around January 26, 2018, Defendant BOYAJIAN signed the Disposition Report. The Disposition Report included false statements and omitted known exculpatory evidence.

109. At the time of the Detention Hearing, Jurisdiction Hearing, and Disposition Hearing, there was no evidence that ASHLEY or HECTOR had a history of substance abuse or a history of mental health problems. Also, there was no evidence that ASHLEY or HECTOR had ever been arrested or convicted of any crimes.

110. Based on Defendants THAO, RUVALCABO, VUE, BOYAJIAN multiple false statements to the Juvenile Court, A.R., D.R., H.M., and G.M. continued to be detained in

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

County facilities and not at home with their loving mother. As a result, they were deprived of regular, open, and free contact and companionship of family and friends, including their parents.

111.   At all times herein, supervisor Defendants RUVALCABO, VUE, and supervisor DOES (1) personally and directly took the offensive and tortuous actions in concert with their subordinate defendants and/or (2) directed subordinates to commit the actions that violated PLAINTIFFS' rights and/or (3) set in motion a series of actions by their subordinates that they knew or reasonably should have known would cause the subordinates to deprive the PLAINTIFFS of their rights and/or (4) knew or reasonably should have known that their subordinates were engaging in these acts and that their conduct would deprive the PLAINTIFFS of these rights and these Defendants failed to act to prevent their subordinates from engaging in such conduct.

112.   Defendant COUNTY agents and supervisors RUVALCABO and VUE, after having conducted a detailed review of the matter, agreed with, ratified, and condoned the conduct of the Defendants THAO, BOYAJIAN, GUARACHA, ROBLEDO, and DOE social workers.

113.   At no point did any investigation by the DEFENDANTS reveal any evidence or proof that the MINORS were neglected or abused in any way by ASHLEY and HECTOR. Moreover, at no point did any investigation by DEFENDANTS reveal any other evidence of a crime.

114.   ASHLEY, HECTOR, A.R. and D.R. were deprived of the care, companionship, custody, and other protected familial interests by the COUNTY and CITY DEFENDANTS. As a direct result of the DEFENDANTS' misconduct, this family has suffered severe harm. This includes A.R., D.R., H.M., and G.M. being separated from their familiar surroundings and housed in foster care, countless emotional challenges, numerous unfounded allegations, and the breakage in the familial bonds that naturally arise between good parents and their children.

## **FIRST CAUSE OF ACTION**

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

## VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) (1ST AMENDMENT FAMILIAL ASSOCIATION) BY PLAINTIFFS AGAINST ALL DEFENDANTS AND DOES 1 through 10

115.   PLAINTIFFS hereby incorporate by reference the preceding paragraphs as though set forth fully herein.

116.   PLAINTIFFS are individuals and citizens of the United States, protected by 42 U.S.C. § 1983.

117.   PLAINTIFFS allege that the right to familial association guaranteed under the First Amendment is "clearly established" such that a reasonable social worker, police officer in the individual DEFENDANTS' situation would know it is unlawful to remove a child from the care, custody, and control of his or her parents or to question, examine, or search a child in the absence of exigent circumstances without first obtaining a warrant to do so.

118.   DEFENDANTS had at all times relevant to the present Complaint, an affirmative duty and obligation to recognize and conduct themselves in a manner that confirms, provides for, and does not violate the protections guaranteed PLAINTIFFS under the United States Constitution, including those under the First Amendment, to include without limitation, the protection of parental rights, the right to privacy, family integrity, and the right to familial relations.

119.   DEFENDANTS, and each of them, were acting under color of state law when they acted, or knew and agreed and/or conspired, to violate PLAINTIFFS' civil rights by, but not limited to, removing, detaining, and continuing to detain, A.R., D.R., H.M., and G.M. from the care, custody, and control of ASHLEY and HECTOR, without either or both, just cause or authority, thereby violating PLAINTIFFS' rights under the First Amendment of the United States Constitution.

120.   None of the DEFENDANTS obtained or sought a protective custody warrant prior to seizing A.R., D.R., H.M., and G.M. None of the DEFENDANTS sought or obtained Plaintiffs ASHLEY's and HECTOR's consent to remove A.R., D.R., H.M., and G.M.

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Further, none of the DEFENDANTS had specific, articulable evidence to support any reasonable basis for believing A.R., D.R., H.M., and G.M were in immediate danger of sustaining serious bodily injury or death within the time it would have taken to obtain a protective custody warrant. Further, none of the DEFENDANTS attempted a less restrictive means to accomplish any legitimate, or even claimed, interest in protecting the MINOR's best interests. Indeed, PLAINTIFFS allege, upon information and belief, that DEFENDANTS, and each of them, purposefully failed to seek a custody warrant knowing that insufficient grounds or evidence existed to support such application or as a result of unconstitutional policy, custom, or practice of never obtaining warrants prior to seizing children. Reasonable and less intrusive alternative means existed to secure both PLAINTIFFS' civil rights and security, without the warrantless removal of the MINORS, yet these DEFENDANTS, and each of them, intentionally failed to pursue or even investigate such less intrusive alternative means.

121.    DEFENDANTS, and each of them, maliciously violated, conspired, or both, to violate the civil rights of PLAINTIFFS. DEFENDANTS, acted deliberately or with callous or reckless indifference to the substantial rights of PLAINTIFFS, or fueled by an evil motive or intent.

122.    As a direct and proximate result of DEFENDANTS' actions, and each of their misconduct, PLAINTIFFS have suffered, and will continue to suffer, general and special damages according to proof at trial, including physical, mental, or both, anxiety and anguish, among other things.

123.    The wrongful and despicable conduct of the DEFENDANTS, as herein alleged, was intentional, done with malice, oppression, or fraud, with a callous or reckless indifference to the rights of PLAINTIFFS, or motivated by an evil intent, such that PLAINTIFFS are entitled to recover punitive damages in accordance with law and subject to proof at trial.

## SECOND CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) (4th AMENDMENT)

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

## BY A.R. and D.R. AGAINST ALL DEFENDANTS and DOES 1 through 10

124.   PLAINTIFFS hereby incorporate by reference the preceding paragraphs as though set forth fully herein.

125.   On October 30, 2017 and November 1, 2017, DEFENDANTS were acting under color of state law when they knew and agreed, and thereby conspired and caused the unlawful seizure of A.R and D.R. from their home, detained them, and questioned them without exigency or court order; and without the consent and/or knowledge of a parent. DEFENDANTS acted with deliberate indifference to the rights of A.R and D.R. as protected by the United States Constitution and laws.

126.   The aforesaid conduct of the DEFENDANTS violated the civil rights of A.R and D.R. as found in the Fourth Amendment of the United States Constitution and as enforced under 42 U.S.C. §1983, by, but not limited to, acting and conspiring to seize, detain, coerce, question, and interfere with their person, without proper or just cause and/or authority, without parental consent, without parental knowledge or presence, and without court order in violation of the Fourth Amendment right against unreasonable searches and seizures.

127.   The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. " At [its] very core stands the right of a [person] to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511, 81 S. Ct. 679, 5 L. Ed. 2d 734 (1961). "Searches and seizures inside a home without a warrant are," therefore, "presumptively unreasonable."

128.   Commencing on October 30, 2017, DEFENDANTS and DOES 1 through 10, inclusive, and each of them, as alleged herein, were acting under color of state law when they knew and agreed, and thereby conspired, to unlawfully detain, question, threaten, examine, and/or remove the Plaintiffs A.R and D.R., and did so without proper reason, authority, or court order (i.e. see *Mabe v. County of San Bernardino*, 237 Fd. 3rd 11001 (2001); *Rogers v. County of San Joaquin*, 487 F.3d 1288 (2007); *Wallis v. Spencer*, 202

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

F.3d1126 (9th Cir. 2000); and including California Welfare and Institutions §§ 305 and 309), without reasonable or probable cause, and with deliberate indifference to the rights of A.R and D.R.

129.    The aforesaid DEFENDANTS, and each of them, conspired to interfere with, and did violate the civil rights of A.R and D.R., as set forth under 42 U.S.C. §1983, found in the Fourth Amendment of the United States Constitution, by, but not limited to, acting and conspiring to remove, detain and continue to detain, the person and/or physical and legal custody of the A.R and D.R., from the care, custody, and control of their mother, ASHLEY, without proper or just cause and/or authority, without parental consent, and without court order, including as retaliation for their mother's exercise of free speech, all of which was in violation of A.R and D.R. Fourth Amendment right against unreasonable searches and seizures.

130.    PLAINTIFFS are also informed and believe that on or after October 30, 2017, that the COUNTY Defendants, and DOES 1 through 10, inclusive, initiated medical examinations and procedures conducted on A.R and D.R., without the knowledge, consent, authorization of their mother, ASHLEY, without the consent or presence of ASHLEY, and without any order or warrant for such examination, in violation of the A.R and D.R. rights, and in violation of ASHLEY's rights, including those as set forth in clear and established law in the case of *Wallis v. Spencer* (9 Cir. 2000) 202 F.3d 1126.

131.    DEFENDANTS had, and have, an affirmative duty and obligation to recognize, acknowledge, and respect the constitutional rights of the PLAINTIFFS, and to conduct themselves in a manner that confirms, provides for the preservation of, and does not violate their rights. These rights include, without limitation, the right to privacy, family integrity and the right to remain free of non-consensual unwarranted forensic medical examinations all arising under the First, Fourth, and Fourteenth Amendments to the United States Constitution. Moreover, those employee DEFENDANTS who, in their official capacity had supervisory and/or policy making authority, shared duties identical to those of their respective employers.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

132.   The above listed constitutional mandates apply equally to government and to those private persons who are willful or voluntary participants with the government in conducting unwarranted forensic medical examinations. *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

133.   As a direct result of DEFENDANTS' violations, and in accordance with 42 U.S.C. §1983, the civil rights of A.R. and D.R. have been violated in that they have suffered, and will continue to suffer damages, including but not limited to, physical and/or mental anxiety and anguish; as well as to incur attorney's fees, costs and expenses in this matter as authorized by 42 U.S.C. §1988, in an amount not yet ascertained, all of which shall be shown according to proof at trial.

134.   Said aforementioned DEFENDANTS conduct as herein alleged was intentional, done with malice, and with conscious disregard for the rights of the PLAINTIFFS herein, and as a result of their despicable conduct, PLAINTIFFS are therefore entitled to recover punitive damages from the said individual Defendants' wrongful acts and the amount of the Defendants' wealth.

### THIRD CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983 (14th AMENDMENT PROCEDURAL DUE PROCESS) BY
### By ASHLEY and HECTOR AGAINST ALL DEFENDANTS and DOES 1 through 10

135.   PLAINTIFFS reallege, adopt, and incorporate as if set forth at length all prior paragraphs hereinabove.

136.   At all applicable times herein, DEFENDANTS, were acting under color of state law when they wrongfully acted or failed to act and conspired together as set forth herein.

137.   DEFENDANTS, knew and agreed, and thereby conspired, to unlawfully detain the MINORS from ASHLEY and HECTOR without just cause or authority, without imminent threat of serious bodily injury, and without court order, thereby depriving said

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

PLAINTIFFS of their procedural due process rights secured to them under the Fourteenth Amendment of the U.S. Constitution as to their rights to procedural due process of law including by not implementing and/or following, or by ignoring, the procedural safeguards required to satisfy due process. The PLAINTIFFS possessed a liberty interest in familial integrity and association with respect to the MINORS due to the fact that the PLAINTIFFS and MINORS had a long-standing custodial relationship such that together they constituted a preexisting family unit at the time the MINORS were removed from their care. PLAINTIFFS had an important liberty interest in preserving the integrity of their family.

138.   PLAINTIFFS are informed and believe that DEFENDANTS knew and agreed, and thereby conspired to question, threaten, examine, and coerce PLAIINTIFFS and the MINORS, and initiate, pursue, and continue to pursue, a dependency investigation and (without any basis) as to the MINORS and to cause said MINORS to be detained, doing so without proper reason or authority, court order (i.e. see *Mabe v. County of San Bernardino*, 237 Fd. 3rd 11001 (2001); *Rogers v. County of San Joaquin,* 487 F.3d 1288 (2007); *Wallis v. Spencer,* 202 F.3d 1126 (9th Cir. 2000); California Welfare and Institutions §§ 306, 309, 313 & 319), without reasonable probable cause, and with deliberate indifference to the rights of said PLAINTIFFS and/or failing to correct the wrongful conduct of the other DEFENDANTS, as protected by the United States Constitution and laws.

139.   The aforesaid DEFENDANTS, and each of them, conspired to interfere with and violate the civil rights of the PLAINTIFFS, as set forth under 42 U.S.C. §1983 found in the Fourteenth Amendment of the United States Constitution, by, but not limited to, acting and conspiring, without just, reasonable or proper cause or warrant to remove and detain MINORS from their custody and care, and then to continue with dependency investigations to remove custody of MINORS from PLAINTIFFS, without proper or just cause and/or authority, including as: (a) retaliation for PLAINTIFFS exercise of free speech; (b) by the use of intimidation, coercion and duress; (c) by using false and

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

fabricated evidence and testimony; and (d) by failing to provide exculpatory evidence during the initiation and pendency of the dependency proceedings in violation of, and interference to, the PLAINTIFFS' constitutional rights to procedural due process of law under the Fourteenth Amendment.

140.    PLAINTIFFS are also informed and believe that after the removal of the MINORS, COUNTY Defendants, initiated and performed medical examinations and procedures on the MINORS, without the knowledge, consent, authorization of PLAINTIFFS, without the consent or presence of PLAINTIFFS, and without any order or warrant for such examination, in violation of PLAINTIFFS' rights, including those as set forth in clear and established law in the case of *Wallis v. Spencer* (9 Cir. 2000) 202 F.3d 1126.

141.    The aforesaid DEFENDANTS, and each of them, conspired to interfere with and violate the civil rights of the PLAINTIFFS, as set forth under 42 U.S.C. §1983 found in the Fourteenth Amendment of the United States Constitution, by interrogating the MINORS without court order, parental consent, parental knowledge, parental presence, and without just and reasonable cause in violation of the PLAINTIFFS' Fourteenth Amendment rights of familial association.

142.    On October 30, 2017 and thereafter, DEFENDANTS were acting under color of state law when, without exigency, Court Order, or consent, they agreed, and thereby conspired, to seize, detain, and unlawfully and unduly influence and threaten and coerce the MINORS into responding to their interrogation and interview. At the time of the interrogation, DEFENDANTS knew of and deliberately disregarded ASHLEY's and HECTOR's constitutional rights under the Fourteenth Amendment.

143.    DEFENDANTS had, and have, an affirmative duty and obligation to recognize, acknowledge, and respect the constitutional rights of PLAINTIFFS, and to conduct themselves in a manner that confirms, provides for the preservation of, and does not violate their rights. These rights include, without limitation, the right to privacy, family integrity and the right to remain free of non-consensual unwarranted forensic medical

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

examinations all arising under the First, Fourth, and Fourteenth Amendments to the United States Constitution. Moreover, those employees of DEFENDANTS who, in their official capacity had supervisory and/or policy making authority, shared duties identical to those of their respective employers.

144.    The above listed constitutional mandates apply equally to government and to those private persons who are willful or voluntary participants with the government in conducting unwarranted forensic medical examinations. *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

145.    At no point did any investigation by the DEFENDANTS reveal any evidence or proof that the MINORS were neglected or abused in any way by ASHLEY and HECTOR. Moreover, at no point did any investigation by DEFENDANTS reveal any other evidence of a crime.

146.    As a direct result of these DEFENDANTS' violation, and in accordance with 42 U.S.C. §1983, PLAINTIFFS civil rights have been violated in that they have suffered, and will continue to suffer damages, including but not limited to, physical and/or mental anxiety and anguish; as well as to incur attorneys fees, costs and expenses in the underlying case and in the matter, as authorized by 42 U.S.C. §1988 in an amount not yet ascertained, all of which shall be shown according to proof at trial.

147.    The individual Defendants' wrongful conduct as herein alleged was intentional, done with malice, and with conscious disregard for the rights of the PLAINTIFFS herein, and as a result of their despicable conduct, PLAINTIFFS are therefore entitled to recover punitive damages from said individual DEFENDANTS' wrongful acts and the amount of the DEFENDANTS' wealth.

## FOURTH CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983 (14ᵗʰ AMENDMENT SUBSTANTIVE DUE PROCESS) By ASHLEY and HECTOR AGAINST ALL DEFENDANTS and DOES 1 through 10

148.    PLAINTIFFS hereby incorporate by reference the preceding paragraphs as though

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

set forth fully herein.

149.   DEFENDANTS, as alleged herein, were acting under color of state law when they knew and agreed, and thereby conspired, to unlawfully detain, question, threaten, and examine the MINORS and to intimidate, retaliate, injure, and coerce PLAINTIFFS, and/or to threaten to initiate and pursue a dependency investigation (without any basis) as to the MINORS, and to cause said MINORS to be out of the care, custody, and control of ASHLEY and HECTOR; doing so without proper reason, authority, or court order (i.e. see *Mabe v. County of San Bernardino,* 237 Fd. 3rd 11001 (2001); *Rogers v. County of San Joaquin,* 487 F.3d 1288 (2007); *Wallis v. Spencer,* 202 F.3d 1126 (9th Cir. 2000); California Welfare and Institutions §§ 306, 309, 311 and 319), without reasonable or probable cause, and with deliberate indifference to the rights of said PLAINTIFFS and/or in failing to correct the wrongful conduct of the other DEFENDANTS. The PLAINTIFFS possessed a liberty interest in familial integrity and association with respect to the MINORS due to the fact that the PLAINTIFFS and MINORS had a long-standing custodial relationship such that together they constituted a preexisting family unit at the time the MINORS were removed from their care. PLAINTIFFS had an important liberty interest in preserving the integrity of their family. PLAINTIFFS were entitled to due process protection when the DEFENDANTS decided to remove the MINORS from their preexisting family unit.

150.   The aforesaid DEFENDANTS, and each of them, conspired to interfere with and violate the civil rights of the PLAINTIFFS, as set forth under 42 U.S.C. §1983, as to PLAINTIFFS' substantive due process rights protected by the Fourteenth Amendments of the United States Constitution, including as to their liberty interests in the right of familial association, and their privacy rights under the California State Constitution, by, but not limited to, acting and conspiring to remove, detain and continue to detain, the person and/or physical and legal custody of the MINORS from the care, custody, and control from ASHLEY and HECTOR without proper or just cause and/or authority, including by the use of intimidation, coercion and duress, and by using false and

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

fabricated evidence and testimony, and failing to provide exculpatory evidence, and interference with the PLAINTIFFS' constitutional rights.

151.   The aforesaid DEFENDANTS, and each of them, conspired to interfere with and violate the civil rights of the PLAINTIFFS, as set forth under 42 U.S.C. §1983 found in the Fourteenth Amendment of the United States Constitution, by interrogating the MINORS without court order, parental consent, parental knowledge, parental presence, and without just and reasonable cause in violation of the PLAINTIFFS' Fourteenth Amendment rights of familial association.

152.   As a direct result of these DEFENDANTS' violation, and in accordance with 42 U.S.C. §1983, PLAINTIFFS' civil rights have been violated in that they have suffered, and will continue to suffer damages, including but not limited to, physical and/or mental anxiety and anguish; as well as to incur attorneys fees, costs and expenses in the underlying case and in the matter, as authorized by 42 U.S.C. §1988 in an amount not yet ascertained, all of which shall be shown according to proof at trial.

153.   Said DEFENDANTS' wrongful conduct as herein alleged was intentional, done with malice, and with conscious disregard for the rights of the PLAINTIFFS herein, and as a result of their despicable conduct, PLAINTIFFS are therefore entitled to recover punitive damages from said individual Defendants' wrongful acts and the amount of the Defendants' wealth.

## FIFTH CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) (14th AMENDMENT) BY PLAINTIFFS AGAINST

## COUNTY, THAO, RUVALCABO, VUE, BOYAJIAN and DOES 1 through 10

### *Violation of Plaintiffs' Due Process Right to Be Free From Deception in the Presentation of Evidence to the Juvenile Court*

154.   PLAINTIFFS reallege and incorporate all the aforementioned paragraphs as if set forth in full herein.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

155.   PLAINTIFFS are informed and believe, and thereon allege that, at all times relevant herein, there existed a clearly established due process right not to be subjected to false accusations on the basis of false evidence that was deliberately fabricated by the government, such that a reasonable DEPARTMENT OF SOCIAL SERVICES agent in DEFENDANTS' situation would know it is unlawful to lie, fabricate evidence, and/or suppress material exculpatory evidence in court reports or any other document filed with the juvenile court to influence judicial decision making.

156.   In fact, Defendants COUNTY, THAO, RUVALCABO, VUE, BOYAJIAN and DOES 1 through 10, had the affirmative and self-evident duty to be truthful, accurate, and complete in petitions, reports, and documents submitted to a sovereign court with power to adjudicate substantial rights, including parental rights, and to refrain from using improper, inflammatory, and deceptive means to obtain judicial sustention of recommendations seeking to disparage PLAINTIFFS' liberty interests.

157.   In including knowingly false information and/or omitting material exculpatory evidence, Defendants COUNTY, THAO, RUVALCABO, VUE, BOYAJIAN and DOES 1 through 10, were acting under color of state law when they acted, or knew and agreed and thereby conspired, to knowingly present false allegations, false or coerced testimony, fabricated evidence, and/or suppress exculpatory evidence, before the Juvenile Court, thereby violating PLAINTIFFS' rights found in the First, Fourth, and Fourteenth Amendments of the United States Constitution and breaching their duty to PLAINTIFFS.

158.   Defendants COUNTY, THAO, RUVALCABO, VUE, BOYAJIAN and DOES 1 through 10, and each of them, either singularly or jointly acted, and/or conspired, to deliberately or recklessly present false statements and/or omit known exculpatory omissions material in the Juvenile Dependency Petition and/or reports filed in the Juvenile Court. This deceptive conduct caused the MINORS continued and prolonged detention from ASHELY's and HECTOR's care, custody, and/or control.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

159.  It is well-settled that a social worker may not misrepresent facts or omit material information from reports submitted to the Court. "The right to be free from deception in the presentation of evidence during a protective custody proceeding" has been clearly established for well over 20 years. *Greene v. Camreta*, 588 F.3d 1011, 1035 (9th Cir.2009); accord, *Hardwick*, 844 F.3d 1112, 1118 (9th Cir.2017).

160.  As a direct and proximate result of these Defendants' violations, and in accordance with 42 U.S.C. § 1983, PLAINTIFFS' civil rights have been violated in that they have suffered and will continue to suffer general and special damages in an amount not yet ascertained, but which shall be shown according to proof at trial.

161.  The wrongful and despicable conduct of the social worker Defendants, and each of them, as alleged herein, was intentional, reckless, malicious, oppressive or fraudulent and done in callous indifference to the rights of PLAINTIFFS such that PLAINTIFFS are entitled to recover punitive damages in accordance with law and subject to proof at trial.

## SIXTH CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) (*Monell* CLAIM) BY PLAINTIFFS AGAINST COUNTY AND CITY

162.  PLAINTIFFS hereby incorporate by reference the preceding paragraphs as though set forth fully herein.

163.  COUNTY and CITY are the employers of the social workers, police officers and their co-defendants named herein; and had primary responsibility for the training, education, and supervision of the social workers and police officers, including supervisors of such employees.

164.  PLAINTIFFS are informed and believe and thereon allege that COUNTY and CITY promulgated, encouraged, administered, and/or permitted, the policies, practices, customs, and procedures under which the individual DEFENDANT employees of COUNTY and CITY committed the acts or omissions complained of herein, and was the

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

entity responsible for the implementation and development of training, if any, for employee social workers and police officers.

165.   PLAINTIFFS allege COUNTY and CITY either intentionally or recklessly, whether as a result of policies, practices, customs, or procedures (referred to collectively herein as, "policies"), or as a result of ineffective, non-existent, or inadequate training and education of employees ("training"), caused the individually named employee-defendants to engage in the actions or inactions complained of herein, and such policies and non-existent/inadequate training were a moving force responsible for the acts or omissions of said individually named DEFENDANT employees leading to the violations of rights of the PLAINTIFFS as complained of herein.

166.   PLAINTIFFS allege that COUNTY and CITY, and each of them, have unlawful customs, practices and habits of improper and inadequate hiring, training, retention, discipline and supervision of its investigators, social workers, employees, and/or police officers, mentioned herein, proximately causing the Constitutional deprivations, injuries and damages suffered by PLAINTIFFS alleged herein and above. PLAINTIFFS are informed and believe and thereon allege that the COUNTY and CITY have engaged in constitutionally improper conduct to such an extent that the conduct took on the force and effect of "policy" such that the official and unofficial customs, practices and policies as listed herein became the standard practice of Defendants COUNTY and CITY, and each of them.

167.   At all relevant times herein, Defendant COUNTY and CITY established and/or followed policies, procedures, customs and/or practices (hereinafter collectively referred to as "policy" or "policies"), which were the moving force behind the violations of PLAINTIFFS' constitutional rights alleged above, as are granted to them by 42 U.S.C. §1983 and §1985, as well as the case of *Monell v. New York City Department of Social Services*, 436 U.S. 658(1978), including those under the First, Fourth and Fourteenth Amendments.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

168.   The deprivations of constitutional rights set forth above were caused by Defendants COUNTY and CITY in the following manner. PLAINTIFFS are informed and believe, and thereon allege, that the COUNTY and CITY have a policy, practice, custom, or procedure ("policy") which contains the following elements and constitutes an intent and/or practice, of deliberate indifference to the rights and safety of families such as PLAINTIFFS' family:

-In having a policy and/or custom and practice of permitting social workers and police officers to remove children from their families without exigent circumstances (imminent danger of serious bodily harm), court order and/or the knowledge of such.

-The CITY's official policy governing the removal of children without a warrant by police officers violates the First, Fourth and Fourteenth Amendment's requirements. Specifically, the CITY's official policy expressed in the Madera Police Department Policies is contrary to the requirements of the First, Fourth, and Fourteenth Amendments. The Madera Police Department Policies are unconstitutional as applied by the CITY's police officers.

-Upon information and belief, the PLAINTIFFS allege that there are "non-public" versions of the Madera Police Department Policies that are unconstitutional on their face, or are unconstitutional as applied by the CITY's police officers.

-The CITY has long standing procedures and customs to remove minors without valid warrants. The CITY's interpretation of the differing policies in the Madera Police Department Policies has created and evolved a "longstanding" custom or practice of removing children from their families without legal authority.

-The CITY has failed to properly train its officers in regard to the rights guaranteed under the First, Fourth, and Fourteenth Amendments.

-The CITY has failed to properly train its police officers as to their professional interaction with COUNTY social workers during child welfare investigations.

-The CITY has trained its officers in such a fashion as to lead to the unjustified and unlawful removal of children from their parents. Upon information and belief, the

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

CITY provides no training to its officers on the constitutional parameters they need to consider and obey before placing children into protective custody. This choice of the CITY was a conscious and deliberate choice to risk a likely constitutional violation.

-The CITY has failed to discipline its police officers for the inappropriate and unlawful removal of children. Upon information and belief, no CITY police officer has ever been successfully disciplined for the inappropriate or unlawful removal of a child from their family.

-The CITY's use of language in Madera Police Department Policies encourages its police officers to assist out-of-county agencies such as the DEPARTMENT to remove children without valid warrants or legal authority.

-The COUNTY's official policy governing the removal of children without a warrant by social workers violates the First, Fourth and Fourteenth Amendment's requirements. Specifically, the COUNTY's official policy expressed in the Online Child Welfare Services Policy and Procedures Guides is contrary to the requirements of the First, Fourth, and Fourteenth Amendments. The policies in the Online Child Welfare Services Policy and Procedures Guides are unconstitutional as applied by the COUNTY's social workers.

-Upon information and belief, the PLAINTIFFS allege that there are "non-public" versions of the Child Welfare Services Policy and Procedures Guides that are also unconstitutional on their face in regard to the First, Fourth, and Fourteenth Amendments, or are unconstitutional as applied by the COUNTY's social workers.

-The COUNTY has long standing procedures and customs to remove minors without valid warrants. The COUNTY 's interpretation of the differing policies and procedures within the Child Welfare Services Policy and Procedures Guides has created and evolved a "longstanding" custom or practice of removing children from their families without legal authority.

-The COUNTY has failed to properly train its social workers in regard to the rights guaranteed under the First, Fourth, and Fourteenth Amendments.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

-The COUNTY has failed to properly train its social workers as to their professional responsibilities during interactions with police officers during child welfare investigations. This choice of the COUNTY was a conscious and deliberate choice to risk a likely constitutional violation.

-The COUNTY has trained its social workers in such a fashion as to lead to the unjustified and unlawful removal of children from their family's home. This choice of the COUNTY was a conscious and deliberate choice to risk a likely constitutional violation.

-COUNTY has failed to discipline its social workers for the inappropriate removal of children. Upon information and belief, no COUNTY social worker has ever been successfully disciplined for the inappropriate or unlawful removal of a child from their parents.

-The COUNTY's use of language in the Child Welfare Services Policy and Procedures Guides encourages its social workers to use and seek out other agencies such as the POLICE to remove children without valid warrants.

- COUNTY and CITY have a policy of seizing and detaining children without exigent circumstances (imminent danger of serious bodily harm), court order and/or the knowledge, consent or presence of their parents or legal guardian.

- COUNTY and CITY have a policy of causing minor children to be interviewed without Court Order, parental or guardian consent, parental or guardian knowledge, parental or guardian presence, and without just and reasonable cause.

- COUNTY and CITY have a policy of retaliating against individuals who exercise their constitutional right including to object to, refuse, and/or complain about the actions of the COUNTY and CITY.

- COUNTY and CITY have a policy authorizing and or ratifying without threat of employer discipline or reprimand, the repeated removal of children from their parents or guardians without a warrant, consent, or imminent risk of serious bodily injury to a child[ren] such that would justify or make lawful the removal of the child[ren].

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

- COUNTY and CITY have the policy of acting with deliberate indifference in failing to correct (including counseling and/or discipline) the wrongful conduct of other employees in failing to provide the Constitutional protections guaranteed to individuals, including those under the First, Fourth, and Fourteenth Amendments, when performing actions related to child abuse and neglect, and dependency type investigations and proceedings.

169.    PLAINTIFFS are informed and believe, and thereon allege, that the COUNTY and CITY have no training, or inadequate training, on:

- the scope, nature, and importance of the First and Fourteenth Amendment based rights of familial association, including the right to raise and care for one's child without unreasonable government interference;

- the scope, nature, and importance of the 4th Amendment based right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures;

- the nature, extent, and duration of psychological and emotional damage caused to children and parents/caretakers/relatives by the unlawful and/or unreasonable intervention of government actors acting under the guise of protecting children, including but not limited to the baseless, unreasonable, unlawful removal of children from their parents/caretakers/relatives in the middle of the night;

- the legislative reasoning behind protective custody warrants, the existence of protective custody warrants, and the use of protective custody warrants pursuant to California law specifically, and the use of warrants generally when considering the removal of children from their parents/caretakers that are not at imminent risk of serious bodily injury, and;

- the existence and relevance of federal laws and precedent on the removal of children from their relatives/parents/guardians in the context of an investigation of a child abuse or neglect referral.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

170.   The list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile records.

171.   The policies, procedures, customs and/or practices of CITY and COUNTY were the moving force behind the violations of PLAINTIFFS constitutional rights alleged herein, as are granted to them by 42 U.S.C. §1983, including those under the First, Fourth, and Fourteenth Amendments.

172.   In engaging in the acts, conduct and omissions alleged herein, Defendants COUNTY and CITY, and each of them, while acting within the course and scope of their authority and under color of law, were deliberately indifferent to the risk of harm to the PLAINTIFFS.

173.   COUNTY and CITY breached their duties and obligations to PLAINTIFFS, including but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, practices and/or customs; by failing to properly select, supervise, train, control, review, counsel and discipline their agents and employees as to their compliance with Constitutional safeguards; and by encouraging and permitting the individual Defendants, to engage in the unlawful and unconstitutional conduct as herein alleged.

174.   PLAINTIFFS are informed and believe, and thereon allege, that the individually named Defendants were decision makers in the making and/or implementation of COUNTY and CITY policy with regard to the removal of children in the course of an investigation, and the de facto decision makers on the decision to remove children such as the MINORS from their parents without a warrant, without exigent circumstances, and without valid consent.

175.   Defendants COUNTY and CITY knew, or should have known, that by breaching the aforesaid duties and obligations, it was foreseeable that they would, and did, cause PLAINTIFFS to be injured and damaged by their wrongful policies and acts as alleged herein and that such breaches occurred in contravention of public policy and as to their legal duties and obligations to PLAINTIFFS.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

176.   These actions, or inactions, of COUNTY and CITY are the legal cause of injuries to PLAINTIFFS as alleged herein; and as a result thereto, PLAINTIFFS have sustained general and special damages, as well as incurring attorneys fees, costs and expenses, including those as authorized by 42 U.S.C. §1988, to an extent and in an amount subject to proof at trial.

**SEVENTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**By PLAINTIFFS AGAINTS ALL DEFENDANTS**

177.   PLAINTIFFS hereby incorporate by reference the preceding paragraphs as though set forth fully herein as they relate to a claim for relief for intentional infliction of emotional distress for the actions and inactions of the DEFENDANTS.

178.   PLAINTIFFS allege the facts and circumstances set forth hereinabove set forth all necessary elements for a claim for relief against said DEFENDANTS for intentional infliction of emotional distress, and that the actions of the named individual and DOE Defendants set forth hereinabove were intended to cause the PLAINTIFFS severe emotional distress, or were engaged in with reckless disregard for the likelihood of causing the PLAINTIFFS severe emotional distress, and did in fact cause PLAINTIFFS severe emotional distress.

179.   ALL DEFENDANTS engaged in the aforementioned outrageous, unprivileged conduct, but not limited to: (a) the use of duress and undue influence in forcing PLAINTIFFS to submit to their demands; (b) by unlawfully removing, and detaining, and continuing the detention of the MINORS; (c) by investigating and questioning with intimidation, coercion and duress of the MINORS; (d) by maliciously withholding exculpatory evidence; (e) by falsely and maliciously alleging and reporting that MINORS' physical health and safety was threatened; and (f) by causing MINORS to be physically examined without presence of the PLAINTIFFS.

180.   Defendant COUNTY and CITY are vicariously responsible for these Defendants' conduct under Government Code §815.2, which provides that a public entity is liable for

37

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  injuries caused by its employees within the course and scope of their employment if the

2  employee's act would subject him or her to liability.

3  181.    These DEFNDANTS intended to cause, or acted in reckless disregard of causing,

4  physical and emotional distress when they engaged in such conduct, which they knew

5  not to be true, lawful or proper.

6  182.    DEFENDANTS knew, or should have known, that by unlawfully removing the

7  MINORS from the PLAINTIFFS care it was foreseeable that they would, and did, cause

8  PLAINTIFFS to be injured and damaged by their wrongful acts as alleged herein.

9  DEFENDNATS were aware that the MINORS were in the custodial care of ASHLEY

10  and HECTOR; and DEFENDANTS were aware that they did not possess a valid warrant

11  to remove the MINORS. Unlawfully removing children from their custodial parents and

12  caretakers foreseeably causes harm to all the members of the family unit, such as the

13  PLAINTIFFS.

14  183.    As a legal result of DEFNDANTS' tortious conduct, PLAINTIFFS suffered

15  physical and emotional distress, including, but not limited to, fright, nervousness,

16  anxiety, worry, mortification, shock, humiliation and indignity to an extent and in an

17  amount subject to proof at trial.

18  184.    DEFENDANTS, knowingly and willfully acted with malice and oppression and

19  with the intent to harm PLAINTIFFS in a despicable manner. Therefore, PLAINTIFFS

20  are entitled to an award of punitive damages for the purpose of punishing these

21  Defendants and to deter them and others from such conduction in the future.

22  **EIGHTH CAUSE OF ACTION**

23  **NEGLIGENCE**

24  **BY PLAINTIFFS AGAINST ALL DEFENDANTS and DOES 1 thru 10**

25  185.    PLAINTIFFS hereby incorporate by reference the preceding paragraphs as though

26  set forth fully herein.

27  186.    PLAINTIFFS assert this Cause of Action for Negligence pursuant to California

28  Government Code §§ 815.2, 815.6 and 820.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

187.   Government Code section 820.21 creates liability for social workers and child protection workers who "conduct investigations or proceedings" when certain acts are committed maliciously. These acts include but are not limited to perjury, fabrication of evidence, and obtaining testimony under duress or undue influence. Malicious conduct is committed either to cause injury or despicable conduct that is committed with a willful and conscious disregard of the rights of others. DEFENDANTS are not entitled to immunity here.

188.   At all relevant times mentioned here, each of the DEFENDANTS owed a duty of care to members of the public, including the PLAINTIFFS, to be properly trained and to exercise reasonable care as they perform their duties as social workers and police officers employed by the COUNTY and CITY.

189.   In engaging in the acts, conduct and omissions alleged herein, COUNTY and CITY Defendants, and each of them, acted unreasonably and below the applicable standard of care. In engaging in the acts, conduct, and omissions alleged herein, COUNTY and CITY Defendants, and each of them, actually and proximately caused the injuries and damages alleged herein.

190.   COUNTY and CITY Defendants owed PLAINTIFFS an affirmative duty of care to exercise reasonable and ordinary care and skill in investigating, documenting, and assessing the PLAINTIFFS' child welfare circumstances.

191.   Defendants THAO, RUVALCABA, VUE, GUARACHA, ROBLEDO, and BOYAJIAN failed to execute their professional responsibilities as social workers defined by the COUNTY's job classification.

192.   Defendants HOOVER failed to execute his professional responsibilities as a police officer as defined by the CITY's job classification.

193.   Defendants RUVALCABA and VUE failed to train, supervise and review the activities of THAO, GUARACHA, and ROBLEDO as required and defined by the COUNTY'S job classification social worker supervisor. This is exemplified by the errors and omissions in THAO's Juvenile Court Reports.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

194.   COUNTY and the DEPARTMENT has adopted the California Structured Decision Making (SDM) Model as a policy. SDM is designed to bring structure and consistency to each decision point in the child welfare system, through the use of evidence based, objective and comprehensive assessment tools. Despite adopting the SDM, COUNTY Defendants have a custom of not following and obeying the SDM model and policies.

195.   The SDM Model also required that THAO complete a safety assessment within two working days of his first contact with PLAINTIFFS. Upon information and belief, PLAINTIFFS allege that a safety assessment was not completed.

196.   Defendant RUVALCABA was responsible for reviewing and approving THAO's completed risk assessment tools, and ensuring the documentation was in place to support the scoring of each risk factor.  RUVALCABA failed to execute her supervisory responsibilities to review THAO's casework for accuracy and completeness.

197.   Upon information and belief, THAO and RUVALCABA not only failed to take the necessary and appropriate actions as a reasonable social workers but also failed to document accurately in the case record any pre-placement preventative efforts made or services provided as required pursuant to CDSS DIV 31-315.

198.   Defendant VUE was responsible for ensuring THAO's and RUVALCABA's social work activities, case records and reporting to the court reflected compliance with legal requirements and was thorough and accurate in presenting information. It is questionable as to whether VUE even read the reports carefully based on the errors and lack of pertinent information presented.

199.   At all relevant times, the COUNTY and CITY Defendants were under a mandatory duty not to interfere with ASHLEY's and HECTOR's custody of the MINORS unless certain conditions were met, which did not exist here.  (See Welf. & Inst. Code §§ 300.2, 305, 306, 307, 307.4, 308, 309, 311, 313, 319, 328, 328.3, 332, 340.)

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

200.  At all relevant times, the COUNTY and CITY, through its subdivision and entity DEPARTMENT and POLICE respectively, were under a mandatory duty not to interfere with parents' custody of their child unless certain conditions are met, which did not exist here.  (See Welf. & Inst. Code § 305, 306, 307, 307.4, 308, 309, 311, 313, 319, 328, 328.3, 340.)

201.  At all relevant times, the COUTY and SOCIAL SERVICES had a duty to comply with the regulations and requirements of the Regulations of the California Health and Human Services Agency, Department of Social Services, Child Welfare Services Manual Policies and Procedures. The regulations of the DSS Manual: (i) are regulations established by the DSS pursuant to California Welfare and Institutions Code § 16501; (ii) were duly adopted pursuant to the Administrative Procedures Act, California Government Code §§ 11340 et seq. and filed with the Secretary of State and therefore "have the force of law and are matters subject to mandatory judicial notice." (*Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 124, 145).

202.  As further example, and without limitation, as part of the emergency response protocol, the COUNTY through its subdivision and entity, DEPARTMENT, were required to complete, among other things, a report outlining and weighing factors for removal such as: the caretakers ability to care for child, any precipitating evidence, the child's characteristics, and family factors, among other things. Despite such an affirmative duty, there was no report inclusive of relevant and mandatory factors such as ASHLEY's and HECTOR's ability and desire to care for the MINORS, the lack of any indication of prior abuse or neglect, and numerous other factors indicative of a capable and loving home environment.

203.  The COUNTY through its subdivision and entity, DEPARTMENT, was required to ensure it had authority to remove a child prior to removal. (DSS Manual 31-135(.1).) Despite such a duty, the COUNTY and DEPARTMENT deprived ASHLEY and HECTOR of access to their children and removed the MINORS from their homes without legal authority.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

204.   In addition to the standard of care and reasonable person duties, DEFENDANTS owed PLAINTIFFS statutory and regulatory duties imposed by both federal and state law, some of which have been specifically referred to hereinabove. Such conduct surmounts to negligence per se.

205.   Defendant COUNTY and CITY also provided inadequate and/or non-existent training, including but not limited to: 1) non-existent and/or inadequate training on the First, Fourth, and Fourteenth Amendments as same apply in interviewing minors and in the context of a child abuse investigation that may involve the removal of children from their parent(s); 2) the existence and/or use of protective custody warrants provided for under California law; 3) the emotional trauma and psychological damage to a child from removal; 4) the clearly established law of this federal circuit on the issues of warrantless removals, exigency, least intrusive means, and the proper investigation before removal of a child; and 5) state law applicable to juvenile dependency proceedings and the reunification of children with their parents, and/or avoidance of removal entirely.

206.   DEFENDANTS' actions and inactions as alleged herein and were negligent, careless, mistaken and/or reckless.

207.   DEFENDANTS' breaches and violations of the duties owed to PLAINTIFFS were a substantial factor in causing PLAINTIFFS physical, mental, and emotional pain and suffering.

**PRAYER FOR RELIEF**

1. For general damages according to proof against all DEFENDANTS;

2. For special damages according to proof against all DEFENDANTS;

3. For punitive damages against all individual DEFENDANTS;

4. For pre-judgment and post-judgment interest, according to law, against all DEFENDANTS;

5. For attorneys' fees against all DEFENDANTS;

6. For costs of suit against all DEFENDANTS; and

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1

7. For such other and further relief as the Court deems just and proper.

2

3    Dated: November 7, 2018

Respectfully submitted,

4

LANZONE MORGAN, LLP

5

6    By: _____

7    Jomo K. Stewart, Esq.

8    jks@lanzonemorgan.com
     Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**